[No. D012369. Fourth Dist., Div. One. Nov. 7, 1991.]

In re ALBERTO R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ALBERTO R., Defendant and Appellant.

**COUNSEL**

Catherine Aragon, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Keith I. Motley and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—On this appeal we determine the sentence enhancement defined in Penal Code[1] section 186.22, subdivision (b), enacted as part of the Street Terrorism Enforcement and Prevention Act (the Act), is facially constitutional and constitutional as applied in this case.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On February 7, 1990, at about 5 p.m., Alberto R., a member of the 38th Street Shelltown Gang (Shelltown), was a passenger, along with three other Shelltown members, in his ex-girlfriend's car, which she was driving at his request through rival gang territory, following another car. As the cars turned the corner, driving in front of La Central Store (La Central), a regular hangout for the Logan Red Steps (Red Steps) across from Chicano Park, a person in the first car threw a bottle out the window and yelled "1920," a known slogan for the Shelltown gang.

A member of the Red Steps, who was standing in front of La Central at that time, bent over while looking toward the first car. Alberto then fired a few shots at that person, hitting him in the leg and lower backside.

Alberto's girlfriend immediately ducked down in the car and sped off. When she stopped for a red light, her car was rammed from behind twice by a large pickup truck which spun her car completely around. Alberto and his friends jumped out of her car and ran. After she drove home, she called the police.

Alberto and six other Shelltown members were charged with various crimes arising out of the drive-by shooting. In an amended petition filed under Welfare and Institutions Code section 602, Alberto was alleged to have conspired to commit murder (§§ 187, 182), to have attempted to commit murder (§§ 187, 664), and to have committed an assault with a firearm (§ 245, subd.(a)(2)). The attempted murder was alleged to have been "willful, deliberate, and premeditated" as defined in sections 664.1 and 189. It was also alleged the attempted murder and the armed assault were committed by Alberto as a gang member under section 186.22, subdivision (b)(2), and that a firearm was used to commit both crimes within the meaning of section 12022.5.

Before the jurisdictional hearing, Alberto's case was severed from that of four of the defendants. Alberto and the other two defendants were tried

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] Because the sufficiency of the evidence is not challenged, we briefly summarize the pertinent facts.

together. At the close of the People's case, the juvenile court granted a motion to dismiss the charges against the other two defendants and the conspiracy count against Alberto under Welfare and Institutions Code section 701.1. After the defense and rebuttal evidence was heard, the court found the remaining allegations true. It also determined the attempted murder was without willfulness, deliberation and premeditation.

At the dispositional hearing, Alberto was sentenced to the California Youth Authority for a total of seventeen years, consisting of a nine-year upper term for the second degree attempted murder, a five-year consecutive term for the firearm use, and a three-year consecutive term for committing the crimes as a gang member. The sentence and enhancements on the assault with a firearm were stayed under section 654.

Alberto has timely appealed, launching a multifaceted constitutional challenge to section 186.22, subdivision (b) and contending the juvenile court erroneously convicted him of both the attempted murder and the assault with a firearm charges which arose from the same act. We affirm, briefly resolving his latter contention first, and then exploring and resolving his constitutional challenges.

DISCUSSION

I

*Section 654*[3]

■ Alberto's contention his conviction for the lesser offense of assault with a firearm[4] must be reversed because section 654 prohibits not only multiple punishment for offenses arising out of the same act, but also prohibits multiple convictions is meritless. Although section 654 has been interpreted to apply not only to individual criminal acts, but also to courses of conduct motivated by a single intent or object (*People* v. *Beamon* (1973) 8 Cal.3d 625, 636-639 [105 Cal.Rptr. 681, 504 P.2d 905]), it only bars multiple punishment, not multiple conviction (*People* v. *McFarland* (1962) 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449]).

To alleviate any possible future dual punishment, our Supreme Court in *People* v. *Pearson* (1986) 42 Cal.3d 351, 361 [228 Cal.Rptr. 509, 721 P.2d

---

[3]Section 654 provides in relevant part: "An act or omission which is made punishable in different ways by different provisions of [the Penal] code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

[4]Alberto concedes the offense of assault with a firearm is not a "necessarily [lesser] included offense" of attempted murder, but argues it is in effect a "related offense."

595] held "sentences imposed on [a] defendant can be enhanced on the basis of the convictions for which he served a sentence; but convictions for which service of sentence was stayed may not be so used unless the Legislature explicitly declares that subsequent penal or administrative action may be based on such stayed convictions." In the absence of such legislation, the juvenile court below properly stayed the assault with a firearm conviction under section 654. (See 42 Cal.3d at pp. 361-363.)

## II

### Section 186.22, Subdivision (b)

Alberto's major contention on appeal concerns section 186.22, subdivision (b), which allows additional punishment when a person is found to have committed a felony as a "criminal street gang" member. He argues this statute is unconstitutionally vague on its face and its application in his case is overbroad thereby violating his due process, freedom of association and equal protection rights. Alberto's attack first concentrates on five different phrases within the statute he considers vague and then switches to other constitutional considerations.

■ Although a person may not generally successfully challenge a statute for vagueness if his conduct is clearly covered by the statute (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081]), a facial challenge on grounds of vagueness and of overbreadth is proper when the person challenges a statute which reaches "a substantial amount of conduct protected by the First Amendment . . . ." (See *Kolender* v. *Lawson* (1983) 461 U.S. 352, 371 [75 L.Ed.2d 903, 918, 103 S.Ct. 1855].) Moreover, since Alberto attacks the basic provisions of section 186.22, subdivision (b), which, if found vague and overbroad, would invalidate the entire statute, contrary to the Attorney General's position, Alberto has standing to make this constitutional attack. (See also *People* v. *Green* (1991) 227 Cal.App.3d 692, 696-697 [278 Cal.Rptr. 140].)

We therefore address the merits. In holding section 186.22, subdivision (b) is constitutional, we first review the applicable law, the language of the statute, its legislative history, other California cases that have dealt with or construed the statute, and Alberto's specific constitutional complaints.

## A

### Applicable Law

■ Generally, to withstand a claim of facial vagueness based on due process considerations, a statute must satisfy two basic requirements: "First,

a statute must be sufficiently definite to provide adequate notice of the conduct proscribed. '[A] statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. [Citations.]' [Citations.] ' "[B]ecause we assume that [a person] is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly. Vague laws may trap the innocent by not providing fair warning." ' [Citations.] [¶] Second, a statute must provide sufficiently definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. 'A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' [Citation.] 'Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." ' [Citations.]" (*People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381, 389-390 [250 Cal.Rptr. 515, 758 P.2d 1046].)

■ Concerning a challenge to a statute on grounds it is overbroad, the United States Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines." (*Kolender v. Lawson, supra,* 461 U.S. at p. 359, fn. 8 [75 L.Ed.2d at p. 910].) Thus "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." (*NAACP v. Alabama* (1964) 377 U.S. 288, 307 [12 L.Ed.2d 325, 338, 84 S.Ct. 1302].) However, to successfully challenge a statute as overbroad, the overbreath must not only be real, but must be substantial as well, judged by the legitimate reach of the law. (See *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 618 [37 L.Ed.2d 830, 843-844, 93 S.Ct. 2908].)

■ These specific rules supplement the fundamental rules for construing statutes which require us to initially turn to the words of the statute to ascertain its intent so as to effectuate the purpose of the law. (See *T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338].) As with all provisions of the California Penal Code, the statute at issue here must be construed according to the fair import of its words and, if any ambiguity is found, the legislative purpose will guide its interpretation. (*People v. Community Release Bd.* (1979) 96 Cal.App.3d 792, 795-796 [158 Cal.Rptr. 238]; *Daudert v. People* (1979) 94 Cal.App.3d 580, 586 [156 Cal.Rptr. 640].) The words are generally construed in context with the nature and obvious purpose of the statute in which they appear and must be

harmonized in light of the enactment's framework as a whole. (See *Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) "A statute will not be held void for vagueness if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources." (*In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 116 [104 Cal.Rptr. 472].)

The fact a word or phrase is somewhat imprecise does not per se violate due process requirements. (*Roth* v. *United States* (1957) 354 U.S. 476, 491 [1 L.Ed.2d 1498, 1510-1511, 77 S.Ct. 1304].) All the Constitution requires is that the words "convey[] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." (*United States* v. *Petrillo* (1947) 332 U.S. 1, 7-8 [91 L.Ed. 1877, 1882-1883, 67 S.Ct. 1538].) As noted by our Supreme Court in *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1128-1129 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]:

"The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the like. Indeed a wide spectrum of human activities is regulated by such terms . . . . Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind."

With these legal principles in mind, we turn to the challenged statute in this case.

B

*The Statute and Its Legislative History*

Section 186.22, subdivision (b) provides: "(1) Except as provided in paragraph (2), any person who is convicted of a felony which is committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall upon conviction of that felony, in addition, and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or three years at the court's discretion. The court shall order the imposition of the middle term of the sentence enhancement unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its choice of sentence enhancements on the record at the

time of sentencing. [¶] (2) Any person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served." This section was enacted as part of the Act by emergency legislation in 1988. (Added by Stats. 1988, ch. 1242, § 1; Stats. 1988, ch. 1256, § 1.)

The legislative materials concerning the Act reflect it was originally crafted to combine criminal penalties and strong economic sanctions, including the forfeiture of specified gang member property, in response to the increasingly violent youthful street gang members throughout the state and, in particular, in Los Angeles. It was recognized there was no existing law which made the commission of criminal offenses by individual members of street gangs separate and distinctly punished offenses, or which would authorize the forfeiture of the proceeds of gang-related activity. (Background for stated purpose of the Act in Sen. Com. on Judiciary Rep. for May 26, 1987, hg.)

The final analysis before the Senate Rules Committee, amended August 29, 1988, reflects the bill was amended several times in the Assembly to clarify and strengthen provisions relating to criminal gang activities and delete the forfeiture of specified assets obtained through criminal street gang activities provisions. The final bill created new crimes related to criminal street gangs, established criminal penalties for "(a) willfully promoting or assisting in any felonious criminal conduct of a street gang, as defined, and (b) receiving proceeds derived from a pattern of criminal gang activity under specified conditions. The measure further provides for sentence enhancements that would result in an additional prison term for persons committing crimes in order to promote or assist street gang members." (Sen. Rules Com., Analysis of Sen. Bill No. 1555 (1987-1988 Reg. Sess.) as amended Aug. 29, 1988.)

In addition, the bill authorized specified prosecution agencies and private citizens to bring an action to abate as a nuisance any building or place used for certain gang activities and specifically exempted from the Act "employees engaged in concerted activities for their mutual aid and protection, or the activities of labor organizations or their members or agents." (§ 186.23.)

Section 186.21 of the Act specifically states the intent of the Legislature in enacting the section challenged in this case (and the entire Act) was to eradicate criminal street gang activity which had been found to be "individually and collectively" a "clear and present danger to public order and safety and are not constitutionally protected." (*Ibid.*) ██ ██ The

Legislature specifically declared the Act was not intended to interfere with the constitutionally protected rights of association[5] and freedom of expression. (*Ibid.*)

The Act in section 186.22, subdivision (a) makes it a criminal offense for any person to actively participate in any criminal street gang "with knowledge that its members engage in or have engaged in a pattern of criminal gang activity," and to willfully promote, further or assist "in any felonious criminal conduct by members of that gang."

A "criminal street gang" is specifically defined under the Act in subdivision (f) of section 186.22, as: "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (8),[6] inclusive, of subdivision (e), which has a common name or common identifying sign or symbol, whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

A "pattern of criminal gang activity" is defined in subdivision (e) of section 186.22, as: "the commission, attempted commission, or solicitation of two or more of the following offenses, provided at least one of those offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons: [¶] (1) Assault with a deadly weapon or by means of force likely to produce great bodily injury . . . . [¶] (2) Robbery . . . . [¶] (3) Unlawful homicide or manslaughter . . . . [¶] (4) The sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances . . . . [¶] (5) Shooting at an inhabited dwelling or occupied motor vehicle . . . . [¶] (6) Arson . . . . [¶] (7) The intimidation of witnesses and victims . . . . [¶] (8) Grand theft of any vehicle, trailer, or vessel . . . ."

---

[5]Although the United States and California Constitutions protect the right of association, this right may be limited upon a clear showing an association or organization is actively engaged in lawless conduct. (*Dennis* v. *United States* (1951) 341 U.S. 494, 516-517 [95 L.Ed. 1137, 1156, 71 S.Ct. 857].)

[6]In 1989, section 186.22, subdivision (e) was amended to add the eighth crime to the list of offenses which constituted a "pattern of criminal gang activity." (Stats. 1989, ch. 144, § 1.)

C

*California Cases*

The constitutionality of section 186.22, subdivision (a) was upheld earlier this year. (*People* v. *Green, supra,* 227 Cal.App.3d 692.) In *People* v. *Green, supra,* 227 Cal.App.3d 692, the defendant, convicted for his participation in a criminal street gang, brought claims of vagueness and overbreadth similar to those which Alberto now raises, that key words in the statute were undefined, uncertain and were capable of including persons who became members of a gang out of intimidation.

The court in *Green* found the terms "actively participates," "member," "membership," "criminal street gang," "knowledge," "pattern of criminal gang activity," and "willfully promotes, furthers, or assists" to be sufficiently certain to give a defendant "reasonable notice of the conduct which [the statute] prohibits and is no more susceptible to arbitrary enforcement than any other criminal statute." (*People* v. *Green, supra,* 227 Cal.App.3d at pp. 699-704.) Although it found the term "felonious criminal conduct" to impart some uncertainty, it construed the provision as covering "only conduct which is clearly felonious, i.e., conduct which amounts to the commission of an offense punishable by imprisonment in state prison." (*Id.* at p. 704.) As the court stated, "Section 186.22 does not prohibit membership; it prohibits the promotion, furtherance or assistance in any felonious criminal conduct by members. That a member may not be a whole-hearted participant in the felonious criminal conduct should have no bearing on the criminal liability of the person who promotes, furthers or assists such conduct." (*Id.* at p. 700.)

The court in *Green* further noted section 186.22 "carefully circumscribes the conduct to which it applies; a person cannot be made criminally liable under it unless he or she acts with the intention of promoting, furthering or assisting the commission of a felony." (*People* v. *Green, supra,* 227 Cal.App.3d at p. 704.)

Three other California cases[7] have specifically addressed section 186.22, subdivision (a) or (b): *In re Nathaniel C.* (1991) 228 Cal.App.3d 990 [279 Cal.Rptr. 236], *In re Leland D.* (1990) 223 Cal.App.3d 251 [272 Cal.Rptr. 709], and *In re Lincoln J.* (1990) 223 Cal.App.3d 322 [272 Cal.Rptr. 852]. Although each of these cases was only concerned with the sufficiency of the

---

[7]As we file this opinion, we are aware another Court of Appeal in *People* v. *Gamez, ante,* page 957 [286 Cal.Rptr. 894] has recently upheld, as we do here, the facial constitutionality of section 186.22, subdivision (b) from vagueness, overbreadth, and due process challenges. (*Id.* at pp. 969-976.)

evidence for the gang-related crime or enhancement and not with either subsection's constitutionality, interestingly, all three found insufficient evidence to support either the specific elements of the offense of participation in a criminal street gang or the sentence enhancement allegation under section 186.22, subdivision (b). Each case noted the statute explicitly defines a criminal street gang and a pattern of criminal activity (see *In re Nathaniel C., supra,* 228 Cal.App.3d at pp. 1000-1001; *In re Leland D., supra,* 223 Cal.App.3d at p. 258; *In re Lincoln J., supra,* 223 Cal.App.3d at pp. 327-328.)

*In re Nathaniel C.* is perhaps the most instructive. The court there reviewed a sufficiency of the evidence challenge as to the same criminal street gang enhancement challenged here, stating the term "criminal street gang" is "the linchpin for the act's provisions. The phrase is defined specifically, and its application requires proof of multiple elements." (*In re Nathaniel C., supra,* 228 Cal.App.3d at p. 1000.) The court then listed the elements and, in reviewing each, noted the element of "pattern of criminal gang activity" for proof of the section 186.22, subdivision (b) enhancement is slightly ambiguous. It explained, however, because the statute requires "only that the offenses be 'committed on separate occasions, *or* by two or more persons . . .'" in order to constitute a "pattern" (228 Cal.App.3d at p. 1003, original italics), "[t]he use of the disjunctive in defining 'pattern of criminal gang activity' means a pattern can be established by two or more incidents, each with a single perpetrator, or by a single incident with multiple participants committing one or more of the specified offenses." (*Ibid.*) The court thereafter found the prosecutor had not presented sufficient evidence to constitute a "pattern." (*Ibid.*)

The court in *Nathaniel C.* also narrowly construed the element of proof for the enhancement that it be shown a primary activity of the gang is the commission of one or more of the eight specified offenses in section 186.22, subdivision (f). It stated, "the statute's focus is much narrower than general criminal conduct; evidence must establish that a primary activity of the gang is one or more of the listed offenses." (*In re Nathaniel C., supra,* 228 Cal.App.3d at p. 1004.)

These three cases reflect the narrow construction the California courts are giving the sections and subsections when called upon to review the sufficiency of the evidence for convictions under the Act. Such strict application lends support to our conclusion the statute challenged in this case is not unconstitutionally vague or overbroad.

D

*Alberto's Contentions*

■ Alberto, like Green, alleges specific terms in the statute make it so uncertain and so broad the statute fails to give fair notice of what conduct it

proscribes, thereby inviting arbitrary enforcement by local police, and includes all forms of association in violation of the First Amendment. As discussed above, two of the phrases Alberto challenges, "to promote, further, or assist" and "felonious criminal conduct," were specifically addressed by the court in *Green.* (*People* v. *Green, supra,* 227 Cal.App.3d at pp. 703-704.) We agree with that court's conclusions, there is nothing unconstitutionally vague or overbroad about the phrase "promote, further, or assist," which has been consistently used by the courts to describe "aiding and abetting" (*ibid.*; see *People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318]), and that "felonious criminal conduct" passes constitutional muster when that phrase is narrowly construed to only pertain to conduct which is purely felonious, i.e., punishable in state prison. (*People* v. *Green, supra,* 227 Cal.App.3d at pp. 703-704.)

Alberto also claims the term "benefit of" contained in the enhancement subsection is impermissibly ambiguous because the Legislature may have only meant for the enhancement to apply when a monetary profit is made by a gang member committing a crime. Because "benefit" may be defined as anything contributing to an improvement in condition, advantage, help, or profit, Alberto argues the phrase "benefit of" makes the statute overbroad, catching within its web those who merely assist gang members and make no monetary profit. Such a narrow construction of the term is unwarranted.

The Legislature used the words "profits" and "proceeds" concerning forfeiture in the findings and declarations of the Act (§ 186.21); it knew these words, but chose not to use them in defining the elements of the enhancement. Thus it is only common sense the Legislature did not intend such a restricted view as Alberto offers. Alberto takes the word "benefit" out of context and treats it in a vacuum. When it is read in context with the other words in the enhancement subdivision, it becomes clear the Legislature intended "benefits" to be interpreted by the qualifying language of the statute, thereby limiting the scope of such conduct to only those acts committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b).) As so defined, the potential for vagueness or overbreadth is eliminated.

Further, Alberto's attempt to create an ambiguity out of the phrase, "and the last of those offenses occurred within three years after a prior offense," contained in section 186.22, subdivision (e) as part of the definition of "pattern of criminal gang activity," is meritless. His anticipated scenarios of gang members being charged for crimes in the future for which they had no knowledge and in which they did not participate are absurd. The Act must be read as a whole. Under section 186.22, subdivision (a), no gang member will

be prosecuted for a future offense unless that person "actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang . . . ."

Nor is Alberto's attack on the phrase "primary activities" valid. Alberto argues the phrase is vague and enforcement would be arbitrary based on who makes the decision of what a gang's "primary activities" are, criminal or social. However, the Act specifically lists the felonious conduct required to come under its spell. In order to enforce this provision, the evidence adduced at the trial would be weighed by the trier of fact as in any other criminal case to determine whether the element of "primary activities" had been proven.

Alberto's due process argument there are no standards governing the exercise of the discretion granted by the Act is likewise invalid. A similar due process argument was raised and rejected in *People* v. *Green*, *supra*, 227 Cal.App.3d at pages 698-704. We agree with that analysis. Section 186.22, subdivisions (e) and (f) specifically designate what crimes a gang must be involved in before a member who knowingly and willfully "promotes, furthers, or assists in" that conduct can be found guilty of the enhancement. As in all criminal cases, the trier of fact then determines whether there is sufficient evidence to support the allegations. No unfettered discretion is shown.

Further, Alberto's contention the "specific intent" phrase of the statute does not save it from being too vague is specious. The plain language of the statute reflects the "specific intent" necessary is "to promote, further, or assist in any criminal conduct by gang members. . . ." (§ 186.22, subd. (b).) Such is adequate notice of what conduct is proscribed. As Alberto concedes, the inclusion of a "specific intent" in the terms of a statute will generally overcome any potential vagueness problem; persons of ordinary intelligence will not have to guess at the applicability of the statute. (See *People* v. *Superior Court* (*Caswell*), *supra*, 46 Cal.3d at pp. 390-391.)

Alberto's additional complaints the statute is vague because it does not contain a "scienter" requirement and the prosecution wrongfully analogized the specific intent requirement with the "knowledge" requirement of the crime of conspiracy are also unfounded. Nothing in the record shows the juvenile court judge was misled by the prosecutor's argument regarding

conspiratorial knowledge, and the statute here is plainly directed at conduct, not on mere knowledge of a criminal activity.

Moreover, because the plain language of the statute requires "active participation in criminal gang activity," Alberto's assertion section 186.22 is unconstitutionally overbroad is easily rejected. The requirements a person know of the group's criminal activity and intentionally further the group's illegal conduct limit the Act's application to those gang members who actually engage in criminal activity. Alberto's attempt to twist around the terms of the statute to create vagueness and overbreadth is similar to the arguments concerning active participation and membership addressed and rejected in *People* v. *Green, supra,* 227 Cal.App.3d at pages 699-701. For the reasons stated there, and above, we reject Alberto's argument.

 Finally, Alberto claims he is denied the equal protection of the laws because the enhancement he was charged with falls in the same category as the crime of conspiracy which includes numerous "procedural safeguards" section 186.22 does not. Conspiracy, however, is a different breed of animal. Its gravamen is the agreement with others to commit an offense. (*People* v. *Horn* (1974) 12 Cal.3d 290, 296 [115 Cal.Rptr. 516, 524 P.2d 1300].) Section 186.22's gravamen is active participation in felonious criminal gang activity under certain defined circumstances. The enhancement of committing gang-related felony crimes can be committed without an agreement to first commit the crime; it can be committed merely on an aiding and abetting theory. Because equal protection only ensures persons similarly situated with equal treatment, no denial of equal protection is shown.

E

*Conclusion*

We decline to frustrate the Legislature's clear intent in enacting the statute at issue here. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 272 [198 Cal.Rptr. 145, 673 P.2d 732].) Because the Legislature so carefully affirmed the right of freedom of association and its conviction not to interfere with those rights, and used limiting language to define the various criminal actions proscribed, we conclude that under both the federal and state Constitutions, section 186.22, subdivision (b) provides adequate notice of the conduct proscribed and does not unnecessarily sweep too broadly so as to invade protected areas of association; the statute is not void for vagueness or overbreadth. Section 186.22, subdivision (b) is thus facially constitutional as applied to Alberto.

## DISPOSITION

Judgment affirmed.

Wiener, Acting P. J., and Rodriguez, J.,* concurred.

---

*Judge of the Minicipal Court for the San Diego Judicial District sitting under assignment by the Chairperson of the Judicial Council.